UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HOLLIE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:13-cv-01824-RLY-TAB |
| | ) | |
| BARTHOLOMEW COUNTY COURT SERVICES, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Hollie Brown, served as a residential officer for Defendant, Bartholomew County Court Services. Brown alleges Defendant terminated her employment as the result of sex discrimination and retaliation under Title VII. Defendant responds that it had valid reasons to terminate her employment, namely that Brown did not meet its legitimate employment expectations. Defendant moves for summary judgment. For the reasons stated below, the court **GRANTS** the motion for summary judgment.

**I.   Background**

   **A.   Brown's Employment with Defendant**

Brown began working for Defendant on May 15, 2010, as a part-time residential officer; she was promoted to full-time in October 2010. A residential officer is responsible for the safety and security of the residents within the Residential Work Release Center. (Filing 31-1, Deposition of Brad Barnes ("Barnes Dep.") 8, 11:5-7).

1

Brown's supervisors were Director of Residential Services, Robert Gaskill and Residential Supervisor, Larry Lee. (*Id.* 9:22-25, 10:1). Gaskill reported to the Director of Court Services, Brad Barnes.

On January 24, 2011, Brown received a written reprimand from Gaskill for falsifying documents after she failed to properly conduct the count of participants on January 19, 2011. (Filing No. 31-8, Written Reprimand). For the next two years, Brown did not receive another reprimand. Then on January 25, 2013, Brown received a written reprimand from Gaskill for failing to follow safety guidelines on January 9, 2013. On that night, Brown allowed a residential participant to stand at the control room door and at times in the control room, which is in violation of Court Services Policies. (Filing No. 31-5, Written Reprimand).

On February 4, 2013, Brown emailed her supervisors, Lee and Gaskill, concerning her co-worker, Tim Thomas. (Filing No. 38-3, Email from Plaintiff to Lee and Gaskill). In an attachment to the email, Brown explained how Thomas talks about "inappropriate subjects" including telling Brown that "every woman needs the shit beat out of them by a man to keep their asses in line," and that Brown "just need[ed] the shit beat out of [her] to line [her] out." (*Id.*). In addition to the sexist comments, Brown complained about the racial slurs directed at their co-worker, John Jordan. Jordan verified to the supervisors that Thomas made inappropriate comments about women to Brown and inappropriate jokes about African Americans to him. (*Id.* at 2-4). Defendant took no disciplinary action against Thomas.

2

On June 11, 2013, Gaskill and Barnes terminated Brown. She was terminated for "repeated failure to follow safety guidelines" on May 20, 2013. (Filing No. 31-6, Notice of Termination). On that night, Brown and Jordan took the women from the WRAP[1] Program outside to conduct the 12 Step Mapping Class. (Deposition of Hollie Brown ("Brown Dep.") at 48-49). Brown carried a tray of cigarettes from the control room for the participants to smoke. The participants were outside for approximately 30 minutes before returning inside and to their pods. (*Id.* at 49-51). The participants were not patted down upon reentry to the building. (Filing No. 31-6). A few hours later on the same night, Brown took the WRAP participants outside to take the trash to the dumpster. She again had the cigarettes with her. After approximately thirty minutes, they returned inside the building. While in the lobby, one of the participants saw her sister. They hugged three times. Brown did not pat down any of the residents upon reentry to the facility. (*Id*. at 2-3).

Lee and Gaskill met with Brown on June 7, 2013, about the above incident. (Filing No. 31-6). Brown stated that she often takes the participants outside for class and to take out the trash and allows them to smoke during both. In Gaskill's report, he found that Brown violated the smoking policy and the pat down search policy. On June 11, 2013, Lee and Gaskill again met with Brown; Gaskill informed her that by not conducting pat down searches, he felt she violated the safety and security of the facility. He also reminded Brown of the written reprimand she received on January 25, 2013, and

---

[1] WRAP stands for "Women Recovering with a Purpose."

that she had been told that future violations of a similar nature could result in termination. Gaskill then terminated Brown effective immediately. (*Id.* at 2-5). Brown was replaced by a female officer pursuant to the American Correctional Association Standards and the Indiana Association of Community Corrections Act Counties' ("IACCAC") Residential Advisory Committee Guidelines, which require the Residential Center to have at least one male and one female on duty at all times. (Filing No. 31-4, Declaration of Paul Robert Gaskill ¶ 3; Filing No. 31-2, Deposition of Paul Robert Gaskill ("Gaskill Dep.") 20:18-21).

In his deposition, Gaskill emphasizes that Brown was terminated for the failure to perform a pat down of the participants, not for an alleged violation of the smoking policy. (Gaskill Dep. 41:17-18). At his deposition, he indicated that Brown was not prohibited from allowing the residents to smoke outside the facility when taking the trash out. (*Id.* 41:17-22).

Gaskill and Barnes terminated Jordan for the May 20 incident on June 5, 2013. (Gaskill Dep. at 108:24-109:1, 109:10-13).

**II.     Standard**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a

verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.   Discussion

Brown brings two claims against Defendant under the indirect method of proof – a claim for sex discrimination and a claim for retaliation. The court will first address Brown's claim for sex discrimination.

#### A.   Brown's Sex Discrimination Claim

To establish a claim of indirect discrimination, the plaintiff must establish a prima facie case of discrimination; the defendant then must articulate a legitimate non-discriminatory reason for its action; and the plaintiff must prove that reason is pretext. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).

##### 1.   Can Plaintiff establish a prima facie case?

A prima facie case is shown when a plaintiff proves the following: (1) she is a member of a protected class; (2) she was meeting the legitimate expectation of defendant; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees. *See Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). It is undisputed that Brown is a member of a protected class and that she suffered an adverse employment action. Therefore, only the second and fourth elements are at issue. The second and fourth elements merge when an employer applies its legitimate expectations in a discriminatory fashion and the analysis proceeds directly to pretext. *See Coleman v. Donahoe*, 667 F.3d 835, 853 (7th Cir. 2010); *see also Curry v. Menards, Inc.*, 270 F.3d 473, 478 (7th Cir. 2001).

5

### a.     Meeting Legitimate Expectations

Defendant argues that Brown failed to meet its legitimate work expectations by failing to follow safety guidelines.  According to Defendant, there are no comparators because no other employee had three disciplinary actions[2] for failure to follow safety guidelines.  In support, Defendant relies on a chart created by Gaskill.  (Filing No. 31-7).  This report, however, is unreliable because it does not include all disciplinary actions taken by Defendant; it excludes verbal warnings.  (Gaskill Dep. 112:18-25, 113:1-12).  Nevertheless, Brown provides no evidence of another employee with three disciplinary actions.

Brown argues that a jury could conclude she was meeting Defendant's expectations, but for selective enforcement of its policies.  For example, it is not clear what Defendant considers to be a safety violation.  Defendant categorizes Brown's failure to conduct a safety check, which led to her written warning for falsifying documents, as a safety violation.  Additionally, Barnes testified that the removal of the cigarettes is a safety violation.  However, Barnes testified that Thomas's warning for leaving the facility with only one residential officer on duty is not a safety violation.   The court agrees with Brown that the definition of what constitutes a safety violation is not clear, but rather appears to be based on each supervisor's opinion.  Further, the court has not been provided with any documentation of what constitutes a safety guideline violation.

---

[2] Defendant argues Brown has three safety violations; however, the first disciplinary action was categorized as falsifying documents, not as a safety violation.  Brown disputes that it should qualify as a safety violation.  The court is merely summarizing the Defendant's argument and is not determining at this point whether Brown had two or three safety guideline violations.

Because it is unclear what constitutes a safety violation and thus whether Brown was meeting the legitimate expectations of Defendant, the court will evaluate how the employment expectations were applied to similarly situated employees.

### b.  Similarly Situated Employees

To establish that a comparator is similarly situated, the plaintiff must "at least show that the comparators (1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Coleman*, 667 F.3d at 847 (quoting *Gates v. Caterpillar*, 513 F.3d 680, 690 (7th Cir. 2008)).  In evaluating the conduct of the similarly situated employees in a disparate discipline case, the court must determine "whether co-workers 'engaged in comparable rule or policy violations' and received more lenient discipline." *See id.* (quoting *Naik v. Boehringer Inglheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010)). "To determine 'whether two employees have engaged in similar misconduct, the critical question is whether they have engaged in conduct of comparable seriousness." *Id.* at 851 (quoting *Peirick*, 510 F.3d at 689).

The first comparator offered by Brown is Tim Thomas.  Thomas is a Caucasian male residential officer with Defendant.  He, like Brown, is supervised by Lee, Gaskill, and Barnes, and he is subject to the same employment standards.  Thomas and Brown worked the same shift together, including the night that Brown admits to allowing a participant in the control room.  On that night, Thomas stood outside of the control room and carried on a conversation with the participant who was in the doorway.  (Gaskill Dep.

7

64:13-15). Thomas, admittedly, did nothing to end or remedy the safety violation. (*Id.* at 65:24-25, 66:1-3); *see also* (Verbal Warning, Filing No. 38-4). Nevertheless, Thomas approached Gaskill a week later and told him about the incident. (*Id.*). Thomas acknowledged he should have stopped the incident and notified a supervisor. (*Id.*). Gaskill gave Thomas a verbal warning for failure to notify a supervisor of safety violations. (*Id.*). Gaskill did not relay Thomas's role in the incident to Barnes.

Brown, on the other hand, received a written warning for failure to follow safety guidelines. (Filing No. 31-5). According to Gaskill, Thomas did not receive a written warning because "He was not the one in control of the control room, and he was not the one that allowed the participant - - initiated the participant and opened the door and allowed the participant to stand there." (Gaskill Dep. 66:8-12). Barnes later indicated that he thought Thomas should have received a written warning. (Barnes Dep. 50:8-12).

Plaintiff offers no evidence to contradict this explanation. Rather, she suggests that it is suspect that Thomas received a verbal warning for failure to report to a supervisor when in fact he did report the situation to a supervisor. Defendant responds that this is because he should have immediately reported the incident to a supervisor.

The court concludes that Thomas engaged in conduct of the same seriousness as Brown, because both allowed the participant to continue to stand in the door way to the control room. The question of whether this explanation is a sufficient mitigating circumstance to justify the different treatment is one best left to the trier of fact.

Next, Brown submits declarations from William Spurlin and Chancy Shiner, both Caucasian males and former Residential Officers employed by Defendant. Spurlin stated

that he took residents outside of the facility for classes and to throw trash away; he also allowed the participants to smoke during that time. (Filing No. 38-12, Declaration of William Spurlin ("Spurlin Dec.") ¶ 7). Chancy stated that he took the residents outside to throw the trash away and allowed them to smoke. (Filing No. 38-13, Declaration of Chancy Shiner ("Shiner Dec.") ¶ 3). Both stated that Lee and Gaskill were aware of these actions. Further, "[a]s long as the residents were under [their] constant supervision, [they] did not routinely pat them down upon reentry into the facility." (Spurlin Dec. ¶ 6; Shiner Dec. ¶ 4).

      Defendant objects to the characterization that Spurlin and Shiner knew that Lee and Gaskill observed such behavior. As Defendant argues, there is no information other than these conclusory statements to show the supervisors were aware. As such, these statements are merely speculative and are not admissible evidence against the Defendant. Further, neither Spurlin nor Shiner state that the supervisors knew that they did not pat down the participants upon reentry to the facility. According to Defendant, the failure to pat the participants down upon reentry is the reason for Brown's termination, not the fact that she took the participants outside. Although Spurlin and Shiner engaged in conduct of the same seriousness, there is no evidence that their supervisors were aware of such conduct. Therefore, they do not qualify as comparators.

      A reasonable jury could conclude that the employment expectations were applied in a discriminatory manner based on the treatment of Thomas versus Brown. As such, the court will proceed with its analysis.

9

### 2. Has Defendant articulated a legitimate, non-discriminatory reason?

Defendant alleges it terminated Brown's employment for repeated violations of Defendant's safety policies. This is a legitimate, non-discriminatory reason to terminate her employment. The court will now consider whether Brown has shown that reason to be pretextual.

### 3. Is Defendant's reason pretext?

In evaluating whether a reason is pretextual, "[t]he question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." *Coleman*, 667 F.3d at 852. The court is not concerned "that an employer may be wrong about its employee's performance, or may be too hard on its employees. Rather the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Naik*, 627 F.3d at 601.

Defendant argues that Plaintiff cannot show pretext because she admits to the first two violations. Brown counters that Defendant's selective enforcement of its policies creates an issue of fact regarding pretext. As stated above, Brown has not shown any other employee with three disciplinary actions. Furthermore, she has not shown that her employer was aware of any employee who committed the same acts as her and Jordan. Rather, the evidence shows that her supervisors only observed Brown and Jordan violating the safety guidelines by failing to pat down the participants upon reentry to the building. Both were terminated for the conduct without regard to gender. Further,

10

Brown was replaced by a female because her position required a female to fill it. After reviewing all these circumstances, the court cannot find that a reasonable jury could conclude that Defendant's reason for terminating Brown is pretextual for gender discrimination.

      **B.**     **Brown's Retaliation Claim**

A plaintiff may prove a Title VII retaliation claim by showing that (1) she engaged in statutorily protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between the two. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Of these elements, only the third is in dispute. To show a causal connection, a plaintiff may present "circumstantial evidence of intentional retaliation including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at the other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007). Importantly though, "Circumstantial evidence 'must point *directly* to a discriminatory reason for the employer's action.'" *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 881 (7th Cir. 2014) (emphasis added) (quoting *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 777 (7th Cir. 2013)). Furthermore, "Title VII retaliation claims require proof that the desire to retaliate was the *but-for cause* of the challenged employment action." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013) (emphasis added).

The parties devote much of their briefing on this claim to the purportedly suspicious timing of Plaintiff's termination. According to the Seventh Circuit,

11

"Suspicious timing is generally found when an adverse employment action follows close on the heels of protected expression." *Greengrass v. Int'l Monetary Sys., Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015) (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012)). However, "[S]uspicious timing will rarely be sufficient in and of itself to create a triable issue. The reason is obvious: [s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Kidwell*, 679 F.3d 957, 966 (7th Cir. 2012) (internal quotation marks and citations omitted). Defendant argues Plaintiff cannot show a causal connection because her termination occurred four months after she reported Thomas' comments on February 4, 2013, and after she violated the safety guidelines on May 20, 2013. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006) ("This court has held a temporal connection of four months failed to establish a causal connection between a protected activity and an adverse action."). Plaintiff cites to the Third Circuit Court of Appeals for the proposition, "The mere passage of time is not legally conclusive proof against retaliation." *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d Cir. 1993). This is, of course, a true statement of the law. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014) ("[A] long time interval between protected activity and adverse employment action may weaken but does not conclusively bar an inference of retaliation."). However, this court, like the Seventh Circuit in *Tomanovich*, finds that a period of four months (or three months, as Plaintiff asserts) between a protected activity and an adverse action is a significant gap in time. Whereas at least three months passed after Plaintiff complained of discrimination, and then, on May 20, 2013, she violated

12

Defendant's safety guidelines (i.e., failed to perform a safety pat down of participants and took cigarettes from the control room outside), the court does not find the timing of Plaintiff's termination to be suspicious. *See Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 616 (7th Cir. 2001) ("The inference of causation weakens as the time between the protected expression and the adverse action increases, and then additional proof of a causal nexus is necessary.") (internal quotation marks omitted).

  Plaintiff attempts to bolster her timing rebuttal by bootstrapping onto Jordan's complaints. She acknowledges the gap in time between her complaints and her termination, but then attempts to fill that void by noting that Jordan consistently complained to Gaskill and Lee during that time. According to Plaintiff, Jordan's continued complaints kept her own complaints alive and fresh on the minds of her supervisors. She cites no evidence in the record or legal authority to support this proposition though. The idea that Jordan's complaints about race discrimination somehow gave Gaskill and Barnes motivation to retaliate against Plaintiff for her own complaints about sex discrimination is simply untenable. Paraphrasing the Seventh Circuit, "While [Plaintiff] is entitled, as the nonmoving party, to all reasonable inferences in her favor, 'inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.'" *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (quoting *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008)).

  Overall, Plaintiff fails to convince the court that the circumstantial evidence points *directly* to retaliation, which Title VII mandates. *Ripberger v. Corizon, Inc.*, 773 F.3d at

881. Therefore, a rational trier of fact could not find that Plaintiff's complaints about discrimination were the "but for" cause of her termination. Even if the court agreed that retaliation was a motivating factor in the decision to discharge her, that would not save Plaintiff's claim. *Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir. 2013) ("[R]etaliation claims under Title VII require traditional but-for causation, not a lesser 'motivating factor' standard of causation."). A reasonable jury would conclude that Plaintiff was terminated for a legitimate, non-discriminatory reason-namely, that she had violated Defendant's safety policies on at least three separate occasions. As the Seventh Circuit concluded, filing a complaint of discrimination "doesn't insulate an employee from being discharged for conduct that, if it occurred outside an investigation [into that complaint], would warrant termination." *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 745 (7th Cir. 2010). *Accord Jackson v. St. Joseph State Hospital*, 840 F.2d 1387, 1391 (8th Cir. 1988) ("Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for past and present inadequacies [or] unsatisfactory performance . . . ."). This is what is present here. Plaintiff filed a complaint of discrimination on February 4, 2013, but then violated Defendant's safety guidelines on May 20, 2013. The court cannot grant Plaintiff immunity for her conduct on May 20, 2013 simply because she engaged in protected activity. Whereas Plaintiff's retaliation claims fails on the "causal connection" element, summary judgment for Defendant is appropriate. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 681 (7th Cir. 2015).

14

**IV.    Conclusion**

For the reasons set forth above, the court finds that Brown has failed to show that a reasonable jury could conclude that Defendant's reasons for terminating her were pretext for gender discrimination, or that that Brown's termination was in fact retaliatory for her protected complaints.  Therefore, the court **GRANTS** Defendant's motion for summary judgment (Filing No. 31).

**SO ORDERED** this 21st day of September 2015.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.